# In the United States Court of Federal Claims

No. 13-171C
(Filed: December 23, 2013)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

KEITH A. HOUGHTLING,

                *Plaintiff*,

v.

THE UNITED STATES,

                *Defendant*.

Military pay; Article 15 Non-judicial punishment; Justiciability; Disability Retirement; Administrative Separation

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    *Emily M. Wexler*, Chicago, IL, for plaintiff.

    *Barbara E. Thomas*, United States Department of Justice, Commercial Litigation Branch, Washington, DC, with whom were *Marian E. Sullivan*, Assistant Director, *Jeanne E. Davidson*, Director, *Stuart F. Delery*, Assistant Attorney General, for defendant. *Lt. Col. Christopher C. Cox*, U.S. Army Litigation Division, of counsel.

_____

OPINION

_____

BRUGGINK, *Judge*.

    This is an action for military pay. Plaintiff, Keith A. Houghtling, challenges a decision by the Army Board of Correction of Military Records ("ABCMR") to deny his application challenging his administrative separation from the U.S. Army. Plaintiff asserts that his separation was wrongful and that he is entitled to back pay and retirement benefits. The United States ("defendant") filed a motion to dismiss the complaint for lack of jurisdiction

and failure to state a claim and, alternatively, a motion for judgment on the administrative record.  Plaintiff filed a response and cross-motion for judgment on the administrative record.  The motions are fully briefed, and oral argument is unnecessary.  For the reasons set forth below, we grant defendant's motion for judgment on the administrative record.

BACKGROUND

Plaintiff served in the Army during two separate time periods.  He first served from 1991 to 1994.  In 2002, he re-enlisted, starting as a Private (E2) and rising to the rank of Sergeant (E5) by April 1, 2004.  AR[1] 430.  On October 29, 2005, plaintiff began a deployment in Iraq as a combat medic.  AR 52.  An evaluation of his service from February 2005 through January 2006 described him as "a confident leader that is dedicated to ensuring his soldiers are well trained."  AR 104-05.

The Army performed drug tests on plaintiff's unit in Iraq in February 2006.  Plaintiff tested positive for Benzodiozepine (valium).  AR 115-17.  On April 20, 2006, he received a notice that he was subject to an investigation and other appropriate proceedings.  *See* AR 117-18.

On April 30, 2006, a lieutenant sent an email to one of the physicians of plaintiff's unit, asking whether he had ever given plaintiff anything that would cause him to test positive for valium.  *See* AR 125.  In a reply email, the physician, Captain ("Capt.") Sundquist, stated:

> I have tried to recall all the medications that I gave, however, I am truly unable to recall all the events.  I only recal[l] having given pain co[n]trol medications.  I very well may have given a few valium but if they were taken when I was there they would have cleared out of the body by now.

AR 125.  Captain Sundquist also emailed plaintiff on May 5, 2006.  AR 126.  He noted that, "I have honestly tried to remember what I gave you, and I cannot say with certainty that I did or did not give any benzo's [valium].  I recall giving you pain medications but not anxiety/sleep meds."  AR 126.

_____

[1] "AR" refers to the Administrative Record in this case filed by defendant on May 16, 2013.

2

As a response to the test results of plaintiff and other soldiers, the Army's Criminal Investigation Command questioned members of plaintiff's unit. Acting on the advice of counsel, plaintiff did not provide information. AR 98. The following soldiers provided sworn statements: Private First Class ("PFC") Pallenes, Specialist Devon Prince, PFC Christopher Mady, and PFC James Kirlin.

PFC Pallanes stated that, on one occasion, he used valium to help him sleep. AR 211. He asserted that he was given the valium by another solider, PFC Johnson. When Pallanes asked Johnson where he got the valium, Johnson said he bought the drugs while on patrol with plaintiff. AR 211. Johnson allegedly told Pallenes that Johnson, plaintiff, and an interpreter walked into an Iraqi pharmacy and "'asked if they had Valium and they said - yes.'" AR 211. According to Pallenes, Johnson also allegedly told him that plaintiff bought steroids. AR 211. Pallenes never saw plaintiff take illegal drugs and had no personal knowledge that plaintiff did so. *See* AR 212.

Specialist Prince also made a statement that referred to plaintiff visiting an Iraqi pharmacy. AR 214. Prince stated that he went on a patrol to Ad Dawr in January 2006. The patrol consisted of three humvees carrying Prince, Johnson, plaintiff, and several other soldiers. AR 214. Prince stated that, after the trucks stopped in Ad Dawr, plaintiff, Johnson, and two others dismounted and walked out of sight. AR 214. Twenty minutes later, plaintiff and the others came back to the truck, and the patrol moved out of Ad Dawr. Plaintiff was in a separate humvee from Prince. AR 214.

The patrol eventually stopped at a tree line. According to Prince, plaintiff and Johnson approached one of the other trucks. Prince stated that Johnson then "approached our truck with some pills which were in a blister package. He told us they were Valiums and was talking about how they were legal in this country." AR 214. Another private then left Prince's truck and came back with a package that was allegedly steroids. AR 211. Someone told Prince that "Doc Houghtling had only paid $10.00 for each of these." AR 214. Prince also stated, however, that he never saw plaintiff take any illegal drugs. AR 216.

PFC Mady also gave a statement that he saw plaintiff, a staff sergeant named Smith, and other soldiers visit an Iraqi pharmacy in Ad Dawr in January 2006. AR 218. Mady stated that "they were car[ry]ing little plastic bags when they left." AR 218. He also stated that he saw plaintiff sleeping by an Iraqi bunker at a later date and that plaintiff "was trying to put his right glove on his

left hand.  He kept staring at it for the longest time and then attempted to try to put it on again." AR 219.  According to Mady, Smith was nearby.  Smith allegedly said he gave plaintiff four pills and exclaimed "'man I am f--d up!'" *Id.*  Mady stated that he asked Smith what pills he took.  Smith allegedly replied that they were the same pills that plaintiff took.  AR 219.[2]

PFC Kirlin stated that he witnessed plaintiff trying to "put his gloves on for 10-20 minutes."  AR 221.  Kirlin also asserted that he saw Smith at that time, who "seemed like he was in slow motion."  AR 221.  In Kirlin's opinion, it looked like the two had taken valium, AR 221, but he added that he had not actually seen plaintiff take valium.  AR 221-22.  He also asserted that plaintiff had purchased steroids.  AR 222.

The Criminal Investigation Command took all of the above statements on or before May 29, 2006.  *See* AR 211-23.  On June 13, 2006, Lieutenant Colonel ("Lt. Col.") Louis Lartigue notified plaintiff that he was considering whether to punish plaintiff under Article 15 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 815 (2012).  AR 358.  The notice charged plaintiff with the wrongful use of Benzodiazepine (valium), a violation of Article 112a of the UCMJ, 10 U.S.C. § 912a (2012).  AR 358.

According to the notice given to plaintiff, he had certain rights in an Article 15 proceeding.  Plaintiff could present evidence on his behalf, have an open or closed hearing, and have someone speak on his behalf.  AR 358.  He also could decline an Article 15 proceeding and exercise his right to a trial by court martial.  AR 358.  Lt. Col. Lartigue stated that "I will not impose any punishment unless I am convinced beyond a reasonable doubt that you committed the offense(s)."  AR 358.

Plaintiff did not exercise his right to a court-martial, nor did he request an open hearing or ask for a person to speak on his behalf.  He chose to present his defense in person, AR 358, and prepared a letter for his defense, AR 98, 123-24.

In the letter, plaintiff stated, "I am 95 percent certain that I was given valium by CPT Sundquist in January 2006.  He treated me for stress/anxiety

---

[2] The sworn statements of PFC Pallenes, Specialist Prince, PFC Mady, and PFC Kirlin appear in the AR at pages 211-22 and were considered by the ABCMR.  *See* AR 53.

and gave me medication for it." AR 123.  He further asserted that, although he did not have a copy of the prescription, Capt. Sundquist gave him one.  *Id.*  The statement also asserts that a fire destroyed the unit's aid station and its medical records in late January.  *Id.*  An email in the administrative record gives support for this assertion that a fire took place.  AR 122.

 Plaintiff's closed hearing took place on June 18, 2006.  AR 98.  The evidence before Lt. Col. Lartigue included the emails from Capt. Sundquist regarding plaintiff and the statements from PFC Pallenes, Specialist Devon Prince, PFC Christopher Mady, and PFC James Kirlin.  The colonel found plaintiff guilty of the charges.  He demoted plaintiff to Specialist (E4) and ordered plaintiff to forfeit $1009 pay for two months, to serve an extra 45 days of duty, and to serve under restriction for 45 days.  AR 358.  Plaintiff's appeal of this decision was denied on June 23, 2006.  AR 358.

On August 30, 2006, plaintiff arrived at Fort Carson, Colorado, to begin the process of separation from the Army.  AR 99.  At Fort Carson, plaintiff suffered from short-term memory loss, "anxiety, nightmares, and feelings of panic."  AR 99.  He had serious difficulty completing his tasks.  AR 99.

The Army gave plaintiff's unit a urinalysis test on September 21, 2006.  AR 54, 320.  Plaintiff missed this test because he was at sick call.  AR 54, 320.  On September 23, 2006, plaintiff visited a night club, got drunk, and used cocaine.  AR 99.  At that point, he became worried about the harm the drugs would cause and checked into the hospital.  AR 99.  He requested a drug test and tested positive for cocaine.  AR 99.  He notified his chain of command the next day.  AR 320.  Also on that day, the Army conducted drug tests for plaintiff and others who missed the earlier test.  The tests results showed that plaintiff had used cocaine.  *See* AR 54, 320, 325-27, 339.

On December 7, 2006, Major Christopher E. Barkocy gave plaintiff a Notice of Separation pursuant to Army Regulation ("Army Reg.") 635-200, Chapter 14-12c, Commission of a Serious Offense.  AR 28.[3]  The notice

---

[3] The provision states:

Soldiers are subject to action for the following:
. . . . .
c. Commission of a serious offense.  Commission of a serious military or civil offense, if the specific circumstances of the offense

initiated an action to separate plaintiff for the wrongful use of "Benzodizepine in a deployed environment." AR 28. Major Barkocy did not list any other reason for separation. AR 28-29. The notice also indicated that the Commander at Fort Carson, Major General Robert W. Mixon, would make the final decision of whether to separate plaintiff. AR 28, 210.

Attached to the notice were six documents regarding plaintiff's service. *See* AR 29. According to the list, one attachment was "MFR, UA test code, dtd 5 Dec 06." AR 29. This title referred to a "Memorandum for Record." This memo recited that plaintiff tested positive for cocaine while visiting the emergency room in September 2006 and his positive test for cocaine at the base the next day. AR 28-31.

Major Barkocy also submitted a commanding officer's report to the separation authority. In the report, he recommended plaintiff's separation under Army Reg. 635-200, for "wrongfully using Benzodiazepine in a deployed environment." AR 30. The report contained a provision for "[d]erogatory information other than Article 15 and Court-Martial proceedings." AR 31. Major Barkocy entered "None" as the response. AR 31. Attached to the report were several documents. One of those documents included "MFR, UA test code, dtd 5 Dec 06," the same "Memorandum for Record" that was attached to the notice given to plaintiff and that recited plaintiff's positive test for cocaine at the hospital. *See* AR 22, 316, 315-18.

In January 2007, prior to the Army's decision of whether to separate plaintiff, a psychiatrist diagnosed him with Post-Traumatic Stress Disorder. AR 129. This initiated proceedings before the Medical Evaluation Board ("MEB"). As part of his statement to the board, Staff Psychiatrist Dr. Gerald Bissell concluded that plaintiff suffered from "hyper vigilance, hyper startle, irritability, emotional withdrawal, restricted affect, anxiety, insomnia, dsyphoria, flashbacks, diminished interest in things, and feeling detached from others." AR 133. Dr. Bissell found that, according to Army Regulation 40-

---

warrant separation and a punitive discharge is, or would be, authorized for the same or a closely related offense under the MCM. (2) Abuse of illegal drugs is serious misconduct.

Army Reg. 635-200, ch. 14-12.

501 ¶ 3-33,[4] plaintiff "did not meet retention requirements."  AR 133.  Major Barkocy also submitted a statement to the medical board.  AR 130-31.  He asserted that plaintiff was "using the medical system as a way to get out of the trouble that he is in and to obtain benefits as he exits the U.S. Army."  AR 130.

The MEB issued a report on March 8, 2007.  The report noted that, because of his post-traumatic stress disorder, plaintiff failed "to meet retention standards in accordance with AR 40-501 chapter 3, paragraph 3-33."  *See* AR 149-50, 154-55.  The report referred plaintiff to a Physical Evaluation Board to determine if he was fit for duty. AR 155.[5]  Plaintiff never appeared before that board, however, due to his intervening administrative separation.

Plaintiff appeared in front of the Elimination Board on or about March 12, 2007.  *See* AR 55, 205-08, 292.  Evidence considered by the board included the commanding officer's report to the board from Major Barkocy, along with attachments.  *See* AR 31, 315-18.  Plaintiff also submitted a letter. AR 205-08.  In it, he described his continued difficulty with post-traumatic stress.  AR 205-08.  The letter did not recite facts regarding plaintiff's non-judicial punishment in Iraq.  The Administrative Record does not contain a record of the proceeding from the Elimination Board.

On April 20, 2007, Major General Mixon issued his decision regarding plaintiff's administrative separation. He recognized that the MEB referred plaintiff to a Physical Evaluation Board.  He found, however, that plaintiff's "medical condition is not a direct or substantial contributing cause of his misconduct and that administrative separation under Chapter 14-12c, Commission of a Serious Offense, is appropriate in this case."  AR 210.  He approved plaintiff's separation and ordered that plaintiff's service "be characterized as General, (under Honorable Conditions)."  AR 210.

---

[4] Army Reg. 40-501 ¶ 3-33 lists the reasons for referring a soldier to a Medical Evaluation Board as a result of an anxiety disorder.  Paragraph 3-1 of the same regulation states that "This chapter gives the various medical conditions and physical defects which may render a Soldier unfit for further military service."

[5]  The United States Code provides that, if a soldier is unfit for duty because of a disability, the Army may retire him with retirement pay.  *See* 10 U.S.C. § 1201 (2012).

Plaintiff applied to the ABCMR on August 31, 2010.  AR 63.  He requested, *inter alia*, that the ABCMR correct his records to show a medical retirement, award an honorable discharge, expunge his Article 15 punishment for Valium, and refer him to a Physical Evaluation Board for a disability rating and possible benefits.  AR 79.

Plaintiff specifically challenged the Article 15 punishment and his administrative separation.  According to plaintiff, the Army failed to prove that he wrongfully used Valium beyond a reasonable doubt, as required by Army Reg. 27-10 ¶ 3-18(l).[6]  AR 80.  Plaintiff thus asserted that the Army failed to comply with its own regulations.  *See* AR 80.  Plaintiff alleged that the separation was improper because it was based on the Article 15 punishment. AR 85.

The ABCMR denied the application on February 10, 2011.  In its decision, the Board recited the facts of plaintiff's case in a section entitled "Consideration of Evidence."  AR 52-58.  This section recited several events regarding plaintiff's service.

After noting that plaintiff tested positive for valium in February 2006, the Board described the events that followed.  In its description of one of Capt. Sundquist's emails regarding plaintiff's valium use, the Board notes that Dr. Sundquist

> only recalled giving [Mr. Houghtling] pain control medication. He states he very well may have given [Mr. Houghtling] a few valium but if they were taken when [Dr. Sundquist] was there they would have cleared out of the body by the time of the urinalysis.  The doctor stated he had been gone for a few months and the applicant should not be on any medications that he gave him.

AR 53.

---

[6] Army Regulation 27-10 ¶ 3-18(l) states that "[p]unishment will not be imposed unless the commander is convinced beyond a reasonable doubt that the Soldier committed the offense(s)."

The Board also referred to the statements made by other members of plaintiff's unit to the Criminal Investigation Command. Three of the statements, according to the Board, "implicate[d] him in the purchase of illegal substances (steroids) from an Iraqi pharmacy." AR 53. The Board characterized the evidence as revealing the "widespread availability of valium illegally purchased off the Iraqi market by members of the applicant's unit." AR 53. The decision also noted that, according to the statements given by plaintiff's fellow unit members, plaintiff was observed "having difficulty putting on gloves, slurring his speech, and being drowsy during an operation prior to the urinalysis." AR 53.

Also recited by the Board were the events involving plaintiff's service when he returned to the States. The decision notes that plaintiff used cocaine at a night club and that he tested positive for cocaine while at the emergency room and after a drug test performed by the Army the next day. AR 53-54. The Board noted that plaintiff was subject to a separation board proceeding and that "[t]he results of this board were not available for review." AR 55.

In its "Discussion and Conclusions" section, the Board found that there was sufficient evidence to uphold plaintiff's non-judicial punishment of June 2006. The Board noted: "[t]he prevalence of illegal valium obtained by a member of [Mr. Houghtling's] unit while he was present, the fact that his doctor could not remember prescribing him valium, and the fact that the applicant was unable to produce a prescription for valium." AR 59.[7] Also relevant to the Board were the statements that plaintiff purchased steroids and that he appeared to be under the influence of valium during an operation. AR 59. The Board found that "[i]t is reasonable to conclude the officer imposing the applicant's NJP [non-judicial punishment] exercised discretion in the NJP process for the applicant's offense. Therefore, there is insufficient basis to expunge his Article 15, restore his rank, or restore the forfeiture of pay." AR 59.

The ABCMR also noted that "[t]he applicant was not processed for separation based solely on his positive urinalysis for cocaine. However, as indicated in his commander's letter, dated 31 January 2007, he was being processed for separation based on his valium use in Iraq and a positive

---

[7] On May 11, 2012, plaintiff asked the Board to partially reconsider its ruling. The Board denied this request as untimely.

urinalysis for cocaine."  AR 59.  The board concluded that plaintiff was properly separated from the Army.  "The records contain no indication of procedural or other errors that would have jeopardized his rights."  AR 60.

In his complaint in this court, plaintiff makes his claim in four counts. Count I makes a claim for disability and retirement pay under 10 U.S.C. § 1201 (2012), asserting that the non-judicial punishment and administrative separation decision were "arbitrary, capricious, contrary to law, and unsupported by substantial evidence."  Compl. ¶¶ 111-12.

Count II makes a claim under 37 U.S.C. § 204(a)(1) for the money that plaintiff lost because of the non-judicial punishment: the fine imposed in his Article 15 punishment, the subsequent reduction in rank, repayment of part of his enlistment bonus, and what he would have earned but for his administrative separation.

Count III challenges the status of plaintiff's military records pursuant to 28 U.S.C. § 1491(a)(2), specifically his DA Form 2627 that shows his Article 15 punishment.  He requests a correction of that record.

Count IV challenges the introduction of allegedly protected evidence into the separation proceedings in March 2007.[8]  Plaintiff requests an honorable discharge as a result of that introduction of evidence, also pursuant to 28 U.S.C. § 1491(a)(2).

Defendant filed the Administrative Record and now moves to dismiss the first three counts of the complaint as not justiciable under rule 12(b)(6). Defendant also moves to dismiss Count IV for lack of jurisdiction.  In the alternative, the government moves for judgment on the administrative record under rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  Plaintiff opposes the government's motion to dismiss on all but one count and cross-moves for judgment on the administrative record.  In his reply brief, plaintiff conceded that this court lacks jurisdiction over Count IV

---

[8] Paragraph 6-5(c) of Army Regulation 600-85 provides that, if protected evidence is submitted in a soldier's administrative separation proceedings, he will receive an honorable discharge. *See* Compl. Exh. 2 at 11.  Plaintiff alleges that the results of his emergency room drug tests are protected evidence, per paragraph 6-4a(3) of Army Regulation 600-85.  *See id.* at 10.

of the complaint and requests that we dismiss that count without prejudice. We grant that request.

## DISCUSSION

We have jurisdiction over claims seeking money damages from the United States. 28 U.S.C. § 1491(a)(1) (2006). This includes actions for back pay pursuant to the Military Pay Act, 37 U.S.C. § 204 (2006). *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). This extends to claims for pay and benefits that a service member would have received absent a wrongful discharge. *See Holley v. United States*, 124 F.3d 1462, 1463 (Fed. Cir. 1997). We may also order the correction of military records "as an incident of and collateral to" an award of monetary damages. *Id.* § 1491(a)(2); *see Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1988).

I. Justiciability

Although not challenging our jurisdiction over plaintiff's complaint, defendant argues that plaintiff has not presented issues for which we can provide relief. That is to say, defendant believes that this case presents questions beyond our competence. *See generally Voge*, 844 F.2d at 780 ("A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'") (citations omitted). We must be able to identify a duty and a breach, and determine "whether protection for the right asserted can be judicially molded." *Baker v. Carr*, 369 U.S. 186, 192 (1962). If we are unable to do so, we will dismiss the complaint for failure to state a claim for which relief may be granted pursuant to RCFC 12(b)(6). In deciding a motion under rule 12(b)(6), we will assume the allegations in the complaint are true and make all reasonable inferences in the favor of the non-moving party. *Perez v. United States*, 156 F.3d 1366,1370 (Fed. Cir. 1998).

The question of justiciability "is a particularly apt inquiry when one seeks review of military activities," as defendant points out. *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993). There are many "routine personnel decisions regularly made by the services which are variously held . . . beyond the competence . . . of courts to wrestle with." *Voge*, 844 F.2d at 780. Judicial review is only possible where the discretion inherent in the military command is limited and there are "'tests and standards' against which the court can

measure [the military's] conduct." *Murphy*, 993 F.2d at 873 (quoting *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990)). Even when that discretion is unlimited, however, the military is "bound to follow its own procedural regulations if it chooses to implement some." *Murphy*, 993 F.2d at 873. We are not called upon to exercise the discretion "reserved for the military" but we can and do decide "whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Id*.

We must examine plaintiff's claims to determine whether they are suited for judicial review. Count I of the Complaint alleges plaintiff's entitlement to disability pay and benefits, which he alleges he would have received had he not be discharged prior to the Army referring him to a Physical Evaluation Board ("PEB"). Plaintiff alleges that his administrative separation was wrongful because it was based solely on an invalid Article 15 punishment. He alleges specifically that it was in violation of the Army's requirement that Article 15 punishments not be imposed unless the commanding officer is convinced beyond a reasonable doubt of the accused's guilt. It follows, for plaintiff, that it was arbitrary and capricious for the ABCMR to have upheld the Army's discharge and denied plaintiff disability benefits.

Count II is based on the same underlying allegation of wrongdoing in the discharge based upon an invalid Article 15 punishment and the Board's denial of relief. Count II asks for the basic pay that Mr. Houghtling would have received had he not been demoted and discharged prior to the expiration of his term of service and for the amount of his enlistment bonus that he was required to pay back due to early separation. Count III follows on by asking the court to correct plaintiff's service records to show his proper rank of E5 rather than E4, expunge his records pertaining to discharge for drug use, and correct the denial of reference to a PEB.

Defendant argues that each of these claims is a challenge to the merits of the Article 15 proceedings and resulting punishment. Defendant quotes the language used in the complaint: "The Army's imposition of nonjudicial punishment on Houghtling in the absence of proof beyond a reasonable doubt that he used Valium wrongfully was arbitrary, capricious, contrary to law, and unsupported by substantial evidence." Compl. ¶ 123. This is, in defendant's view, not a challenge to the due process afforded Mr. Houghtling and is instead a disagreement with the Army's conclusion that he used valium without a prescription. Defendant cites the opinion of our predecessor court in *Cochran v. United States*, in which the Court of Claims stated that "it is not

this court's function to review the merits of findings of guilt in Article 15 punishment proceedings, but only the disregard or violation of the Constitution, statute or regulations in the conduct of proceedings." 1 Cl. Ct. 759, 770 (1983).

Plaintiff responds in two ways. First, plaintiff points us to *Fisher v. United States*, 420 F.3d 1167 (Fed. Cir. 2005), and argues that the Federal Circuit expressly declined to limit its review to procedure only. *See id.* at 1178-79. Second, plaintiff argues that this is a case in which "tests and standards" can be applied to determine whether the Army's actions were proper. Plaintiff cites Army Regulation 27-10 ¶ 3-16(d)(4); ¶ 3-18l, which plaintiff argues restricts the discretion of the Army by requiring proof beyond a reasonable doubt in Article 15 proceedings. Thus, plaintiff argues, he seeks review of the ABCMR's decision that the Army properly applied the "'beyond a reasonable doubt' standard." Pl.'s Opp'n and Cross Mot. 21.

We begin by identifying the scope of review afforded by the procedural posture of this case. Because plaintiff sought relief from the ABCMR, we are limited to reviewing the decision of the board under the standards of review for agency action. *See Metz*, 466 F.3d at 998. Although much of the complaint is cast in the light of a challenge to the Article 15 proceedings, it is only through the lens of the Board's decision that we may look at those proceedings. Plaintiff asked the ABCMR to correct his records by expunging the Article 15 punishment, upgrading his discharge, restoring his rank to sergeant, and referring him to a PEB. The basis for these requests is that the Army failed to prove that he wrongfully used valium beyond a reasonable doubt. Absent that, he would not have been discharged and would have been referred to a PEB.

We are regularly confronted with claims for back pay for wrongful discharge and with claims of entitlement to disability benefits. The fact that a nonjudicial punishment is the root cause of the alleged wrongs is not sufficient to remove the case from our competence. Plaintiff claims that a particular regulation requiring a standard of proof was not followed in his Article 15 proceedings. The same claim was made before the ABCMR. The board disagreed with plaintiff, and now we are confronted with review of the board's decision under a highly deferential standard. This level of review is sufficiently distinct from review of the sorts of decisions that are purely discretionary and undertaken routinely by the military. We are not called upon to reweigh the evidence presented at the Article 15 hearing or to delve into the

13

Army's decision to administer such a punishment.  Rather, we will decide only whether the record supports the ABCMR's decision that the Army followed its own procedures.  Plaintiff has therefore alleged a claim upon which this court may afford relief.  Defendant's motion to dismiss Counts I, II, and III as nonjudiciable is denied.

II.  Judgment On The Administrative Record

We turn now to the merits of the ABCMR's decision.  We review a decision of a military board for correction of records under the deferential standards prescribed for review of agency action in the Administrative Procedures Act, 5 U.S.C. §§ 701-06 (2012).  *Metz*, 466 F.3d at 998.  The standard is whether the decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law."  *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998).  Factual disputes are resolved by reference to the administrative record, *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005), and plaintiff must establish from this record "by clear and convincing evidence that the board's decision was arbitrary and capricious," *Rose v. United States*, 35 Fed. Cl. 510, 512 (1996).

This case hangs on the sole question of whether the Army followed its own Army Reg. 27-10 ¶ 3-18(l), which provides that "[p]unishment will not be imposed unless the commander is convinced beyond a reasonable doubt that the Soldier committed the offense(s)."  The ABCMR decided that it did and from that concluded that the consequences of the Article 15 punishment–demotion, discharge, and no PEB– were proper as well.  In light of our standard of review, we agree.

It is clear from the ABCMR's decision that it considered the relevant facts pertaining to the Article 15 punishment.  It recited them point by point in seven pages of its written decision.  *See* AR 52-58.  It is also clear that the board understood and considered the relevant Army regulation requiring that the commander be convinced beyond a reasonable doubt.  AR 59 ("The record establishes the commander determined the evidence was sufficient to find the applicant guilty beyond a reasonable doubt.").  The board likewise found that it was reasonable to conclude from the record that the commander had considered the mitigating factors and the evidence that raised doubt of plaintiff's guilt.  *Id.*  The board found nothing additional presented by plaintiff to be sufficient to upset the Article 15 punishment.  *Id.*

14

It is telling that plaintiff's arguments now concern how the evidence ought to have been weighed and what testimony plaintiff's commander and then the ABCMR should have credited. Plaintiff argues that no evidence was presented to show that he lacked a prescription, that valium was available at the aid station where he was stationed, that the statements of Dr. Sundquist are ambiguous and insufficient, that the amount of valium that plaintiff used was within prescription norms, and that the testimony presented from fellow soldiers did not affirmatively state that plaintiff used valium. Defendant naturally counters each of those arguments with the statements and evidence upon which Lt. Col. Lartigue concluded that Mr. Houghtling wrongfully used valium. Defendant concludes that this is sufficient to support the board's conclusions to uphold the punishment. We agree.

We are not in a position to reconsider the evidence and draw our own conclusions. The fact that a reasonable person might have reached a different conclusion is insufficient to overturn the decision of a board. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). As long as there is substantial evidence[9] to support the board's action, it must be upheld. *See id.* at 1157. The ABCMR considered all of the evidence, considered whether Lt. Col Lartigue applied the proper standard, and thereby followed the regulations, and whether the subsequent administrative separation followed procedure. It decided against plaintiff. We cannot identify any irrationality in the board's decision. It did not misapply any standard or fail to consider any evidence. We must therefore affirm its conclusion and grant judgment on the administrative record to defendant.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Count IV for lack of jurisdiction is granted, defendant's motion to dismiss Counts I, II, and III for failure to state a claim is denied, defendant's motion for judgment on the administrative record is granted, and plaintiff's cross motion for judgment on the administrative record is denied. Accordingly, the clerk of court is directed to enter judgment for defendant and dismiss the complaint with prejudice. No costs.

---

[9] Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge